Bob **FURLONG** and Richard **Marr, Petitioners,**

v.

Susan **GARDNER,** as personal representative of the Estate of Robert E. Gardner, Jr., and as successor personal representative of the Estate of Robert Edwin Gardner, III, Respondent.

No. 96SC772.

Supreme Court of Colorado, En Banc.

March 23, 1998.

Wood, Ris & Hames, P.C., F. Michael Ludwig, Dennis A. Hanson, Denver, for Petitioners.

Knapp & Sachs, P.C., Benjamin Sachs, Denver, Alexander & Ricci, Joseph M. Ricci, Colorado Springs, for Respondent.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari to review a court of appeals' order dismissing for the second time an appeal taken by the petitioners. The respondent brought suit in the El Paso County District Court (the trial court) against the petitioners, two officials at the Limon Correctional Facility (LCF), alleging that the petitioners violated 42 U.S.C. § 1983 (1994) and were liable for negligently causing the wrongful death of the respondent's grandson. In turn, the petitioners moved for summary judgment, asserting a qualified immunity defense on the § 1983 claim and a lack of evidence on the negligence/wrongful death claim. The trial court, in an unsigned minute order, reserved ruling on the petition-

ers' motion and ordered, without qualification, discovery to continue. The court of appeals ruled that the minute order was not a final appealable order and, consequently, dismissed the appeal. We now reverse the court of appeals.

We hold that the trial court's reserved ruling order was effectively a final judgment. We also hold that, under the facts of this case, the court of appeals had jurisdiction to hear the appeal, even though the trial court did not sign the minute order. Additionally, we reaffirm our opinion in *City of Lakewood v. Brace*, 919 P.2d 231 (Colo.1996), and hold that the trial court was required to apply the analysis set forth in that case when it ruled on the summary judgment motion. Accordingly, we remand the case to the court of appeals with instructions to direct the trial court to determine the appropriateness of summary judgment consistent with this opinion.

## I.

This case arises from the protracted civil litigation involving the death of Robert Gardner, III. On April 5, 1993, Robert Gardner, III, then an inmate at LCF, was murdered by strangulation. Subsequently, Robert Gardner, III's father, Robert Gardner, Jr., individually and as the personal representative of Robert Gardner, III's estate, brought an action in the trial court predicated on § 1983 and a negligence/wrongful death claim against petitioners Bob Furlong (Furlong) and Richard Marr (Marr).[1] At the time of Robert Gardner, III's death, Furlong was the Warden of LCF and Marr was the Deputy Warden of LCF. Shortly after filing the original complaint, Robert Gardner, Jr. died and Robert Gardner, III's grandmother, Susan Gardner (Gardner), became the substitute plaintiff, representing the estates of Robert Gardner, III and Robert Gardner, Jr.

On June 1, 1995, Furlong and Marr moved for summary judgment, arguing among other things that they were entitled to the defense of qualified immunity on the § 1983 claim. In their motion for summary judgment, Fur-

long and Marr argued that Gardner had neither identified a clearly established right which Furlong and Marr violated, nor had Gardner established that Furlong and Marr's conduct violated any clearly established right.

On August 4, 1995, the trial court entered a minute order regarding Furlong and Marr's summary judgment motion. The minute order stated that the trial court "reserves ruling" on the summary judgment motion. At the same time, the minute order ordered "discovery to continue." The minute order was recorded on a computer printout which indicated the date of the order. However, the trial court judge did not sign the minute order.

Furlong and Marr appealed the trial court's minute order to the court of appeals. On November 15, 1995, the court of appeals ordered Furlong and Marr to show cause why their appeal should not be dismissed without prejudice either because the minute order was not a final, written, dated, and signed order in accordance with C.R.C.P. 58(a) or because the substance of the minute order was not appealable. Rejecting Furlong and Marr's response to the order to show cause, the court of appeals issued an order on December 15, 1995 dismissing the appeal without prejudice on the ground that there was not a final appealable order.

Furlong and Marr then petitioned this court for certiorari review of the court of appeals' order dismissing their appeal. On August 5, 1996, we granted Furlong and Marr's petition for writ of certiorari, vacated the judgment of the court of appeals, and remanded the case to the court of appeals for reconsideration in light of our recent decision in *Brace*.

On remand, the court of appeals again issued an order to show cause why the appeal should not be dismissed without prejudice for lack of a final appealable order. In its show cause order dated September 5, 1996, the court of appeals stated:

---

1. In addition to Furlong and Marr, the complaint also included as defendants certain officials of the Department of Corrections, unnamed LCF employees, and the State of Colorado. Furlong and Marr are the only petitioners in the case now before us.

[I]n as much as the trial court order here (1) has not been signed by the trial court as required by C.R.C.P. 58(a); and (2) does not decide the motions for summary judgment, and thus leaves issues to be resolved, *see Harding Glass Co. v. Jones,* 640 P.2d 1123 (Colo.1982), it appears that the August 5, 1995 trial court order is not an appealable order.

Approximately one month later, after Furlong and Marr filed a response to the court of appeals' order to show cause, the court of appeals dismissed their appeal a second time, ruling that "the unsigned minute order reserving ruling on the motion for summary judgment is not a final appealable order." We granted Furlong and Marr's petition for writ of certiorari to review the court of appeals' second order dismissing their appeal.[2]

## II.

### A.

Before discussing the two issues before us, it is necessary to review both our decision in *Brace* and the Supreme Court's recent decision in *Johnson v. Fankell,* —— U.S. ——, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997). In *Brace,* a former city employee brought an action against the city and certain city officials, alleging state claims based on contract and tort and federal claims under § 1983. *See Brace,* 919 P.2d at 234. The defendants in *Brace* moved for summary judgment pursuant to C.R.C.P. 56, arguing among other things that they were entitled to qualified immunity. *See id.* at 236. In denying the defendants' summary judgment motion, the trial court ruled that "[the trial court] cannot determine whether the qualified immunity of the individual Defendants prevents Plaintiff's action against them and summary judgment is not appropriate on the grounds of Defendants' qualified immunity." *Id.* at 237. On appeal, the court of appeals held that the trial court's denial on the issue of qualified

immunity was not immediately appealable. *See id.*

In reversing the court of appeals, we reviewed the doctrine of qualified immunity in § 1983 cases. *See id.* at 237–41. Preliminarily, we noted that the plaintiff must plead a constitutional violation in order to overcome a qualified immunity defense. *See id.* at 238. Citing Supreme Court case law, we explained that the constitutional right must have been "clearly established" at the time of the action in question, which ensures that a reasonable official in the defendant's situation would have understood his or her conduct violated that right. *See id.*

We went on to explain the relationship between the qualified immunity defense and an interlocutory appeal taken from the trial court's denial of a government official's motion for summary judgment. *See id.* at 238–39. We stated:

Interlocutory appeals are the exception to the general rule that an appeal cannot be taken from anything other than a final decision. Under federal law, this policy is reflected in 28 U.S.C. section 1291 (1994) which provides that [a federal court of appeals] can only hear appeals from final decisions. An analogous provision is found in Colorado law at section 13–4–102(1), 6A C.R.S. (1987), which states that "the court of appeals shall have initial jurisdiction over appeals from final judgments of the district courts."

*Id.* (citation omitted). After reviewing the Supreme Court's then recent decision in *Johnson v. Jones,* 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), and other federal case law, we concluded that the appealability of a trial court's denial of a motion for summary judgment premised on qualified immunity turns on the trial court's underlying rationale. *See Brace,* 919 P.2d at 240–41. If the denial is based on a question of law (i.e., the trial court finds that the plaintiff pled sufficient facts to support a violation of a

---

**2.** We granted certiorari on the following issues:
1. Whether the court of appeals erred in dismissing this appeal because the judgment was not reduced to a writing and dated and signed by the trial court pursuant to C.R.C.P. 58(a).
2. Whether the court of appeals erred in dismissing the defendants' appeal from the trial

court's ruling that postponed a decision on the defendants' motion for summary judgment based upon the qualified immunity defense to claims pursuant to 42 U.S.C. § 1983 and that allows discovery to continue.

clearly established law), the defendant can immediately appeal an adverse trial court ruling. *See id.* at 241. However, if the trial court denies the summary judgment motion because a material, triable question of fact exists, that determination is not immediately appealable. *See id.* Accordingly, we set forth the framework a trial court should apply in determining whether or not to grant summary judgment based on qualified immunity:

> The proper framework for the analysis requires the trial court to first determine whether the facts—as pled by [the plaintiff]—sufficiently state a violation of a clearly established constitutional right. If not, the inquiry stops there. Alternatively, if the trial court finds that [the plaintiff] has met this burden, it must also determine, under a summary judgment standard, if there are genuine issues of material fact such that the issue of qualified immunity must await determination by a trier of fact. The first part of the analysis is immediately reviewable, but the second part is not. Naturally, the trial court's order may encompass both types of findings. In that event, the court of appeals reviews only the legal questions. Nevertheless, if the court of appeals finds that [the plaintiff] has not alleged facts from which a violation of a clearly established constitutional right can be discerned, the trial court's finding that there are issues of fact with respect to that claim is meaningless and does not preclude a grant of summary judgment.

*Id.* at 242–43. Because we could not decipher the basis upon which the trial court denied summary judgment, we remanded the case to the court of appeals with instructions to the trial court to apply the proper analysis. *See id.* at 243.

Subsequent to our *Brace* decision, the Supreme Court rendered the *Fankell* opinion. *See Fankell,* —— U.S. at ——–——, 117 S.Ct. at 1802–07. In *Fankell,* the Court reviewed an Idaho Supreme Court's order dismissing an appeal from a trial court's order which denied the petitioners' motion for summary judgment in a § 1983 action. As in this case, the petitioners in *Fankell* based their summary judgment motion on qualified immunity. The Idaho Supreme Court ruled that the petitioners could not appeal the trial court's order under either the applicable Idaho rule of appellate procedure or § 1983. The petitioners challenged the Idaho Supreme Court's order, arguing that Idaho courts were required to protect the petitioners' right to avoid the burdens of trial by allowing the same interlocutory appeal that would be available in federal court. To support their argument, the petitioners first asserted that Idaho courts, when construing the Idaho appellate rule which allows for appeals from final judgments, orders, and decrees, were obligated to accept the federal definition of "finality" in § 1983 cases. The petitioners also asserted that, to the extent that the Idaho rule did not allow for an appeal from a denial of a summary judgment motion in a § 1983 case, the rule was preempted by federal law.

The *Fankell* Court disagreed with both contentions and held that a defendant in a § 1983 case brought in state court does not have a federal right to an interlocutory appeal from a denial of qualified immunity. *See id.* at ——–——, 117 S.Ct. at 1803–07. First, the *Fankell* Court explained that the term "final decision" the Court adopted in *Mitchell v. Forsyth,* 472 U.S. 511, 528–30, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985), was an application of the "collateral order" doctrine, which originated from the statute governing jurisdiction of the United States courts of appeals, 28 U.S.C. § 1291 (1994). *See Fankell,* —— U.S. at ——, 117 S.Ct. at 1804. Emphasizing federalism principles, the Court explained that while states are free to follow the Court's construction of the collateral order doctrine when interpreting their own jurisdictional statutes, states are not required to do so. *See id.* at ——, 117 S.Ct. at 1804.

Second, as to the preemption argument, the Court emphasized that Idaho's rule was neutral. *See id.* at ——, 117 S.Ct. at 1805. The Court stated that "our normal presumption against pre-emption is buttressed by the fact that the Idaho Supreme Court's dismissal of the appeal rested squarely on a *neutral state rule* regarding the administration of the

state courts," *id.* (emphasis added), and the rule "does not target civil rights claims against the State," *id.* at —— n. 9, 117 S.Ct. at 1805 n. 9. The Court also explained that Idaho's rule, as interpreted by the Idaho Supreme Court, was not outcome determinative because the postponement of appeal until after a final judgment in the case did not affect the ultimate outcome of the litigation. *See id.* at —— – ——, 117 S.Ct. at 1805–06. Additionally, the Court rejected the petitioners' assertion that preemption was required because Idaho's rule did not adequately protect their right to prevail in advance of trial. *See id.* at ——, 117 S.Ct. at 1806. While the right to qualified immunity is rooted in § 1983, the Court explained that the right to immediate appeal in federal court has its locus in § 1291, the federal jurisdictional statute, and hence the latter right is a federal procedural right. In the Court's view, the fact that Idaho did not provide an interlocutory appeal based on the Idaho Supreme Court's interpretation of its own appellate rule did not require preemption of that rule. Thus, *Fankell* rejected our analysis in *Brace* that federal case law controlled with respect to the immediate appealability of the denial of qualified immunity in a § 1983 case. *See Fankell,* —— U.S. at ——, 117 S.Ct. at 1807 (noting that our opinion in *Brace* was contra to the Idaho Supreme Court's ruling).

### B.

 Two points from *Fankell* and *Brace* lead us to conclude, however, that the framework we announced in *Brace* continues to govern appellate review of a state trial court's denial of qualified immunity in a § 1983 case. First, we would violate the principle of neutrality relied upon by the *Fankell* Court by simultaneously denying interlocutory appeals in § 1983 cases while interlocutory appeals are mandated in comparable cases brought under the Colorado Governmental Immunity Act (CGIA), §§ 24–10–101 to –120, 7 C.R.S. (1997). Second, principles of sound appellate practice cause us to follow the approach of federal cases with respect to the collateral order doctrine in § 1983 cases.

### 1.

In order to analyze whether we can foreclose a government official's ability to appeal a trial court's denial of summary judgment in a § 1983 case, we must consider not only our rules of civil procedure, but other statutory provisions providing for interlocutory appeal. Dispositive of this inquiry are the procedural mechanisms for appeal found in the CGIA. In 1992, the General Assembly amended the CGIA to provide that when a governmental entity raises sovereign immunity as a defense, the trial court's ruling on sovereign immunity is a final judgment subject to interlocutory appeal. *See* ch. 172, sec. 3, § 24–10–108, 1992 Colo. Sess. Laws, 1115, 1117. Section 24–10–108, 7 C.R.S. (1997), now provides:

> Except as provided in sections 24–10–104 to 24–10–106, sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant. If a public entity raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery, except any discovery necessary to decide the issue of sovereign immunity, and shall decide such issue on motion. *The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.*

(Emphasis added.)

Similarly, the General Assembly has provided that in suits against a public employee, a trial court's decision on a summary judgment motion based on sovereign immunity is subject to interlocutory appeal. Section 24–10–118(2.5), 7 C.R.S. (1997), provides:

> If a public employee raises the issue of sovereign immunity prior to or after the commencement of discovery, the court shall suspend discovery; except that any discovery necessary to decide the issue of sovereign immunity shall be allowed to proceed, and the court shall decide such issue on motion. *The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal.*

(Emphasis added.)

 Thus, when a trial court denies either a governmental entity's or public employee's

motion for summary judgment based on sovereign immunity, the governmental entity and public employee have a right, provided explicitly by statute, to have the trial court's decision reviewed on an interlocutory basis by an appellate court. Were we to decide that, on the one hand, defendants in § 1983 cases did not have a right to appeal a trial court's denial of a summary judgment motion, while on the other hand, governmental entities and public employees in CGIA cases could pursue interlocutory appeals based on sovereign immunity, we would violate the principle of neutrality enunciated by the *Fankell* Court.

Our analysis in *Brace* of a public employee's claim of "qualified immunity" under the CGIA is consistent with our conclusion here that, because the CGIA provides for interlocutory review when the defendant asserts a sovereign immunity defense, such a right must also exist for defendants in § 1983 cases. *See Brace,* 919 P.2d at 245–46. In *Brace,* we explained that the CGIA provides for an interlocutory appeal when a public employee moves for summary judgment based on sovereign immunity, but not when a public employee moves for summary judgment based on qualified immunity. *See id.* As we explained in *Brace,* that construction follows from the legislature's different treatment of sovereign immunity and qualified immunity defenses in the CGIA. *See id.* at 245 (explaining that "[i]n contrast to sections 24–10–108 and 24–10–118(2.5), 10A C.R.S. (1995 Supp.), the sections governing a governmental entity and public employee's sovereign immunity from suit, section 24–10–118(2)(a) does not provide for interlocutory appeal of an employee's qualified immunity claim").

■ However, the meaning of the term "qualified immunity" is different in the CGIA context from the meaning of the same phrase under § 1983. Whether qualified immunity in a CGIA case exists turns on whether the public employee engaged in willful and wanton conduct, "which mandates a *fact-based determination.*" *Brace,* 919 P.2d at 246 (emphasis added). Thus, qualified immunity under the CGIA, with its origins in a willful and

wanton conduct standard, is ultimately a factual determination.

By contrast, qualified immunity questions under § 1983 are more complicated. As discussed in *Brace,* if the trial court finds that a material issue of genuine fact exists regarding the assertion of qualified immunity under § 1983, the trial court's denial of summary judgment is not immediately appealable. *See id.* at 241. At the same time, a right to interlocutory appeal in § 1983 cases exists when a trial court's ruling on qualified immunity is based on a question of law, that is, "the trial court found that there were sufficient facts pled to support a violation of a clearly established law." *Id.* While the resolution of qualified immunity under the CGIA will necessarily revolve around factual questions, qualified immunity under § 1983 may raise legal questions which are appropriate for an appellate court to resolve without further litigation. Thus, because of these differences, qualified immunity under the CGIA does not apply to the qualified immunity doctrine under § 1983.

Consequently, the principle of neutrality would be violated by providing interlocutory review of sovereign immunity claims in CGIA cases but not in § 1983 cases when the defendant asserts qualified immunity and the trial court rejects that defense as a matter of law.

2.

■ While certainly not mandated, we may seek guidance in interpreting Colorado's statute governing the court of appeals' jurisdiction, section 13–4–102(1), 5 C.R.S. (1997), by turning to federal precedent interpreting 28 U.S.C. § 1291. *See Fankell,* —— U.S. at ——, 117 S.Ct. at 1804 (explaining that "[w]hile some States have adopted a similar 'collateral order' exception when construing their jurisdictional statutes, we have never suggested that federal law compelled them to do so" (footnote omitted)). In interpreting a state statute, we often turn to the analogous federal statute and related case law. *See, e.g., State v. Buckley Powder Co.,* 945 P.2d 841, 844 (Colo.1997) (explaining that "we often look to a similar federal rule for guidance in interpreting our own"); *Regional Transp.*

*Dist. v. Lopez,* 916 P.2d 1187, 1195 (Colo. 1996) (following Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1994), and related federal case law in interpreting the CGIA "because both provide rights of action to injured individuals and both acts encourage the early resolution of disputes through an administrative process"); *Lowery v. Ford Hill Inv. Co.,* 192 Colo. 125, 129–30, 556 P.2d 1201, 1204 (1976) (explaining that "insofar as the provisions and purposes of our statute parallel those of the federal enactments, such federal authorities are highly persuasive").

In *Brace,* we recognized that section 13–4–102(1) was similar to the federal jurisdiction statute governing the United States courts of appeals. *Compare* § 13–4–102(1) (providing in relevant part, "[a]ny provision of law to the contrary notwithstanding, the court of appeals shall have initial jurisdiction over appeals from final judgments of the district courts"), *with* 28 U.S.C. § 1291 (providing in relevant part, "[t]he courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States"). In addition to the similarities between the statutes, we find that the federal § 1983 case law providing for interlocutory review of a trial court's denial of summary judgment when that denial is based on a matter of law reflects the more sound appellate process. When a trial court denies a summary judgment motion based on qualified immunity and that denial

turns on a question of law, the court of appeals is as well positioned at that point in time to review the trial court's ruling as it would be at any subsequent point in the proceedings. In that scenario, it makes no sense to require the government official to proceed with pre-trial litigation. Thus, we continue to follow the federal collateral order doctrine as it applies to a trial court's denial of summary judgment in § 1983 cases. *See Brace,* 919 P.2d at 238–243.

### 3.

Taking these two basic points together—that is, 1) our conclusion that we would impermissibly violate the requirement of neutral appellate procedures by denying Furlong and Marr the right to an interlocutory appeal and 2) our conclusion that federal case law provides appropriate guidance in construing section 13–4–102(1)—leads us to reaffirm our opinion in *Brace.* Thus, the framework we announced in that case for determining the appealability of a trial court's denial of summary judgment continues to apply in § 1983 cases. With this review and these principles in mind, we now turn to the two issues raised by Furlong and Marr in this case.

### III.

The court of appeals dismissed Furlong and Marr's appeal, at least in part,[3] because the trial court's minute order was not signed by the trial court judge as provided in C.R.C.P. 58(a).[4] Under C.R.C.P. 58(a), a

---

**3.** As noted, the court of appeals stated in its September 6, 1996 order to show cause why the appeal should not be dismissed:

> [I]n as much as the trial court order here (1) has not been signed by the trial court as required by C.R.C.P. 58(a); and (2) does not decide the motions for summary judgment, and thus leaves issues to be resolved, *see Harding Glass Co. v. Jones,* 640 P.2d 1123, (Colo. 1982), it appears that the August 5, 1995 trial court order is not an appealable order.

Similarly, in its October 4, 1996 order dismissing the appeal without prejudice, the court of appeals stated:

> [T]he court determines that the unsigned minute order reserving ruling on the motion for summary judgment is not a final appealable order.

**4.** C.R.C.P. 58(a) provides:

Entry. Subject to the provisions of C.R.C.P. 54(b), upon a general or special verdict of a jury, or upon a decision by the court, the court shall promptly prepare, date, and sign a written judgment and the clerk shall enter it on the register of actions as provided in C.R.C.P. 79(a). The term "judgment" includes an appealable decree or order as set forth in C.R.C.P. 54(a). The effective date of entry of judgment shall be the actual date of the signing of the written judgment. The notation in the register of actions shall show the effective date of the judgment. Entry of the judgment shall not be delayed for the taxing of costs. Whenever the court signs a judgment and a party is not present when it is signed, a copy of the signed judgment shall be immediately mailed by the court, pursuant to C.R.C.P. 5, to each absent party who has previously appeared.

trial court is required to prepare, date, and sign a written judgment and the clerk must enter the judgment on the register of actions. The rule provides that the effective date of the entry of judgment is the date the trial court signs the written judgment.

Gardner argues that the trial court's minute order was not a final, appealable order because the trial court failed to sign it. In making this argument, Gardner cites 12 Debra Knapp, *Colorado Civil Procedure Forms and Commentary* § 58.2 (1996), which states that "[a] judgment is not final until there is a written order dated and signed by the court," and supporting case law from the court of appeals.[5]

Countering Gardner's argument, Furlong and Marr note that this court has previously held that a minute order suffices as a final judgment. *See Wesson v. Bowling,* 199 Colo. 30, 31–32, 604 P.2d 23, 25 (1979) (holding that a minute order was effective as a binding judgment under C.R.C.P 58(a)). Furlong and Marr's argument, however, overlooks the fact that the current version of C.R.C.P. 58(a) differs from the version in effect at the time of *Wesson.* When we decided *Wesson,* the trial court did not have to sign the judgment under C.R.C.P. 58(a).[6] C.R.C.P. 58(a) now obligates a trial court to prepare, date, and sign a written judgment. *See* C.R.C.P. 58(a), 12 C.R.S. (1997). Thus, our prior case law holding that a minute order in itself is sufficient as a final judgment is not dispositive.

The parties do not dispute the fact that the trial court did not sign the minute order. The question, then, is whether this technical error divested the court of appeals of jurisdiction to consider Furlong and Marr's appeal. We answer that question in the negative and hold that, under the facts of this case, the court of appeals has jurisdiction to entertain the appeal.

In considering this issue, we are guided by two lines of federal court cases. The first line of cases describes the nature of a trial court's order declining or refusing to rule on a summary judgment motion predicated on qualified immunity. The second line of cases considers the jurisdictional consequences that follow from a trial court's failure to comply with the technical requirements of Fed.R.Civ.P. 58.

### A.

Several federal courts have concluded that an order which declines or refuses to rule on a motion for summary judgment predicated on qualified immunity in a § 1983 action is an appealable, final decision. In *Collins v. School Board,* 981 F.2d 1203, 1204–05 (11th Cir.1993), the Eleventh Circuit considered the appealability of a trial court order similar to the minute order in this case. The trial court in *Collins* expressly reserved ruling on the defendant's summary judgment motion based on qualified immunity "pending the trial in this action." *Collins,* 981 F.2d at 1204. The *Collins* court held that the defendants could appeal the trial court's ruling and explained:

> The district court's order declining to rule on the qualified immunity issue pending trial effectively denies defendants the right not to stand trial. *Because the "reserved ruling" is not materially different from an outright denial of a summary judgment motion,* an immediate appeal on the qualified immunity issue is permissible.

*Id.* (emphasis added). Other federal circuits have reached similar conclusions. *See Workman v. Jordan,* 958 F.2d 332, 336 (10th Cir. 1992) ("[I]f we deny appellate review when a district court postpones until trial a ruling on a qualified immunity defense, a defendant would stand to lose whatever entitlement he

---

5. *See, e.g., In re Estate of Royal,* 813 P.2d 790, 791 (Colo.App.1991) ("[A] judgment is not final until there is a written order, dated and signed by the trial court."), *aff'd,* 826 P.2d 1236 (Colo. 1992); *In re Marriage of Hoffner,* 778 P.2d 702, 703 (Colo.App.1989) ("[F]or there to be a final judgment there must be a written order, dated and signed by the trial court.").

6. In 1984, C.R.C.P. 58(a) was revised to require the trial court to sign the judgment only when the trial court made an oral ruling from the bench and then directed counsel to prepare a written order of judgment. *See* C.R.C.P. 58(a), 7A C.R.S. (1985 Supp.). In 1988, C.R.C.P. 58(a) was revised to require the trial court to sign every judgment. *See* C.R.C.P. 58(a), 7A C.R.S. (1988 Supp.).

or she might otherwise have not to stand trial."); *Unwin v. Campbell*, 863 F.2d 124, 132 (1st Cir.1988) ("As defendants state in their supplemental brief, 'the qualified immunity right not to stand trial is just as effectively lost if an appellate court does not entertain an appeal of a legally erroneous denial of summary judgment as it is if the district court declines to rule itself on the summary judgment motion.' "), *abrogated on other grounds by Johnson v. Jones*, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995); *Helton v. Clements*, 787 F.2d 1016, 1017 (5th Cir.1986) ("It is clear to us, therefore, that an order which declines or refuses to rule on [a] motion to dismiss on the basis of a claim of immunity 'is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.' " (citations omitted)). *Cf. Musso v. Hourigan*, 836 F.2d 736, 741 (2d Cir.1988) ("[T]he same policy considerations that militate in favor of immediate review when a district court rules that a defendant is not protected by qualified immunity[ ] also suggest that interlocutory review is appropriate when a district court denies a motion for summary judgment *without addressing* a proffered qualified immunity defense." (emphasis in original)).

We find these decisions persuasive in analyzing the minute order in this case. Here, the trial court's minute order reserved ruling on Furlong and Marr's summary judgment motion. At the same time, the trial court ordered discovery to continue, and the discovery order was not qualified or limited in any manner. In effect, the trial court's reserved ruling order was the same as a denial of a summary judgment motion in that Furlong and Marr were forced to proceed with pre-trial litigation. While we recognize that the federal court decisions discussed above were based on 28 U.S.C. § 1291, and that we are not bound under *Fankell* to follow the

federal jurisdictional statute, we believe for the reasons discussed above that it is appropriate to follow federal precedent in construing section 13–4–102(1), 5 C.R.S. (1997). Thus, we hold that when a state court hearing a § 1983 case reserves ruling and allows full discovery to proceed, that ruling is a "final judgment" for purposes of conferring appellate jurisdiction under section 13–4–102(1).

**B.**

Having concluded that the trial court's reserved ruling in this case was a final judgment, we next consider the jurisdictional consequences of the trial court's failure to sign the written minute order. Fed.R.Civ.P. 58,[7] the analogous federal rule to C.R.C.P. 58(a), requires the trial court to enter judgment on a separate document. *See* Fed.R.Civ.P. 58. Like the requirement of a signed, dated, and written judgment under C.R.C.P. 58(a), the "separate document" requirement under the federal rule is a technical compliance requirement.

In *Tobey v. Extel/JWP, Inc.*, 985 F.2d 330, 331 (7th Cir.1993), the court encountered a similar technical error as the one in this case. In *Tobey*, the trial court granted the defendants' motion for summary judgment because the plaintiff failed to respond to the defendants' motion. *See Tobey*, 985 F.2d at 331. However, the trial court did not enter a formal judgment. *See id.* While the *Tobey* court recognized that the trial court's order did not comply with Fed.R.Civ.P. 58, the court nevertheless held that it had jurisdiction to hear the appeal:

Although the order does not comply with the requirements of Fed.R.Civ.P. 58, it sufficiently indicates [the trial court judge's] determination to be done with the

---

7. Fed.R.Civ.P. 58 provides in relevant part:
 Subject to the provisions of Rule 54(b): (1) upon a general verdict of a jury, or upon a decision by the court that a party shall recover only a sum certain or costs or that all relief shall be denied, the clerk, unless the court otherwise orders, shall forthwith prepare, sign, and enter the judgment without awaiting any direction by the court; (2) upon a decision by

the court granting other relief, or upon a special verdict or a general verdict accompanied by answers to interrogatories, the court shall promptly approve the form of the judgment, and the clerk shall thereupon enter it. Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a).

case to constitute a final decision for purposes of 28 U.S.C. § 1291.

*Id.* The Seventh Circuit reached a similar conclusion in *LaMotte v. Roundy's, Inc.,* 27 F.3d 314, 315 n. 2 (7th Cir.1994), explaining:

Plaintiff argues that this Court lacks jurisdiction over this appeal because the district court's order was not reduced to a separate judgment as required by Fed. R.Civ.P. 58. It is clear, however, from the district court's opinion that the district judge intended his order to be a final disposition of the issue. That is all that is required to give this court jurisdiction— the requirement of Rule 58 is not jurisdictional.

■ The underlying principle from these federal cases is that an appellate court may review the trial court's final disposition of a matter, even when that final disposition suffers from technical noncompliance with the procedural rule governing entry of judgment. While we acknowledge that the trial court here did not necessarily intend the minute order to be a final disposition of the issue, the effect of the order, as we explained, was the equivalent of a final disposition of Furlong and Marr's motion for summary judgment.

Moreover, we also note that, as a practical matter, the trial court's failure to sign the minute order carries with it the same consequences as its reserved ruling on the summary judgment motion. If, as it ruled here, the court of appeals cannot review the minute order because it is unsigned, then the trial court's order stands. Consequently, the government officials' asserted right to have the law suit dismissed will continue unreviewed by a higher court. That result is inconsistent with *Brace* and we reject it. Therefore, the court of appeals had jurisdiction to review the trial court's minute order, notwithstanding the fact that the trial court failed to sign it.

### C.

In summary, we conclude that the court of appeals had jurisdiction to consider Furlong and Marr's appeal in this case. First, a trial court's order reserving ruling on a summary judgment motion in a case like this is effectively a denial of summary judgment and, therefore, is a "final judgment" under the court of appeals' jurisdictional statute. *See* § 13–4–102(1). Second, when a trial court renders a final judgment on a qualified immunity claim in a § 1983 case, as the trial court effectively did here, the fact that the trial court's written minute order is not signed as required by C.R.C.P. 58 does not, by itself, prevent the court of appeals from entertaining the appeal. Accordingly, the court of appeals erred when it ruled that it could not review the trial court's minute order because it was not signed.

### IV.

■ We now turn to the second basis upon which the court of appeals dismissed Furlong and Marr's appeal. In its show cause order dated September 5, 1996, the court of appeals stated that the trial court order "does not decide the motions for summary judgment and thus leaves issues to be resolved." This part of the court of appeals' ruling also was erroneous. As we explained above, a trial court order which reserves ruling on a summary judgment motion in a § 1983 case based on qualified immunity is the equivalent of a denial of summary judgment. Under *Brace,* a trial court's denial of summary judgment is appealable when the denial is based on a question of law and is not appealable when the trial court finds that material issues of genuine fact exist regarding the issue of qualified immunity. *See Brace,* 919 P.2d at 241.

In this case, it is neither possible nor appropriate at this stage of the proceedings for us to determine whether the trial court correctly denied summary judgment. In the complaint, Robert Gardner, Jr. alleged that LCF lacked adequate procedures, rules, and regulations to guide or direct LCF personnel in protecting LCF inmates. Robert Gardner, Jr. also alleged that LCF personnel failed to follow acceptable correctional standards in protecting inmates. As to the § 1983 claim, Robert Gardner, Jr. specifically alleged that Furlong, Marr, and the other defendants intentionally, recklessly, and/or deliberately disregarded Robert Gardner,

III's substantive constitutional rights. Robert Gardner, Jr. also claimed that Furlong, Marr, and the other defendants violated his own associational and liberty interests in the continued life of his son.

Furlong and Marr asserted in their summary judgment motion that Gardner failed to demonstrate the existence of a clearly established right when the events in question occurred. Furlong and Marr also argued that Gardner did not establish that their conduct violated any such right. In response to the summary judgment motion, Gardner argued that the rights allegedly violated were clearly established and pointed to facts, which according to Gardner, required the trial court to deny summary judgment.

Because the trial court in this case did not provide any rationale accompanying its order reserving ruling, it is not possible to determine whether or not the ruling is appealable under *Brace*. Under these circumstances, the court of appeals should have exercised its jurisdiction over Furlong and Marr's appeal and remanded the case to the trial court to make explicit the reasoning underlying its order. Therefore, we now remand the case to the court of appeals with instructions directing the trial court to apply the appropriate analysis under *Brace*.[8]

■ If, upon remand, the trial court is not able to rule on the motion without further factual clarification, the trial court may allow discovery which is narrowly tailored to the asserted qualified immunity defense. *See Workman*, 958 F.2d at 336. Here, however, the trial court erred when it entered a general, non-circumscribed order allowing discovery to continue, as opposed to entering an order limiting discovery to facts related to Furlong and Marr's assertion of qualified immunity. Only the latter, narrowly tailored order is permissible prior to ruling on the summary judgment motion.

## V.

Accordingly, we remand the case to the court of appeals with instructions to return it

to the trial court so that it may apply the two-part analysis we enunciated in *Brace* for determining the appropriateness of summary judgment. *See Brace*, 919 P.2d at 242–43. If the trial court cannot apply the *Brace* analysis without additional facts, the trial court may order narrowly tailored discovery to assist it in this regard.

---

8. Furlong and Marr also assert that the due process provisions under the Colorado and United States Constitutions required the court of appeals to hear their appeal. Given our resolution of the case, it is unnecessary to address this argument.