**RUSH CREEK SOLUTIONS, INC., Plaintiff–Appellee,**

v.

**UTE MOUNTAIN UTE TRIBE, Defendant–Appellant.**

No. 03CA0517.

Colorado Court of Appeals, Div. II.

Aug. 12, 2004.

Moye Giles, LLP, Alison J. Thayer, Cormac T. Connor, Denver, Colorado, for Plaintiff-Appellee.

Peter Ortego, Towaoc, Colorado, for Defendant-Appellant.

Opinion by Judge CASEBOLT.

In this contract dispute involving the sovereign immunity of a federally recognized Indian tribe, defendant, Ute Mountain Ute Tribe, appeals the trial court's order denying its motion to dismiss the complaint of plaintiff, Rush Creek Solutions, Inc. We deny Rush Creek's motion to dismiss this appeal,

affirm the trial court's order, and remand for further proceedings.

Rush Creek and the Tribe signed a contract in which Rush Creek agreed to provide the Tribe computer software and maintenance support. The Tribe's Chief Financial Officer (CFO) signed the contract on its behalf. The contract contains the following clause entitled "Default":

> This Agreement shall be interpreted in accordance with the internal laws (as opposed to conflicts of law provisions) of the state of Colorado. As part of the consideration for the agreements contained herein, [the Tribe] hereby consents to the exclusive jurisdiction of any state or federal court with jurisdiction over the Town of Littleton, County of Arapahoe, State of Colorado. [The Tribe] waives any objection which [the Tribe] may have based on lack of jurisdiction or improper venue or forum non conveniens to any suit or proceeding instituted by [Rush Creek] under this Agreement in any state or federal court with jurisdiction over the Town of Littleton, County of Arapahoe, State of Colorado, and consents to the granting of such legal or equitable relief as is deemed appropriate by the court.

Alleging that the Tribe failed to make payments under the contract, Rush Creek initiated this action in the Arapahoe County District Court, asserting breach of contract, unjust enrichment, and promissory estoppel. In response, the Tribe filed a C.R.C.P. 12(b)(1) motion to dismiss, challenging subject matter jurisdiction based on sovereign immunity. The Tribe asserted that, while the CFO had authority to enter into contracts, he had no authority to waive its sovereign immunity, and it presented an affidavit of the Chairman of the Tribal Council so attesting.

In response, Rush Creek asserted that the quoted contract language expressly waived the Tribe's sovereign immunity. In addition, it asserted that, although the Tribe's Constitution authorizes the Tribal Council to prescribe tribal officials' duties, that document is silent concerning authority to waive the Tribe's sovereign immunity. Rush Creek contended that the Tribe had failed to prove

that tribal officials, such as the CFO, were prohibited from waiving its sovereign immunity. Alternatively, Rush Creek requested the court's approval to conduct limited discovery on the issue.

In reply, the Tribe argued that neither the CFO's authority to sign the contract nor the Constitution's silence regarding who could waive sovereign immunity implied that the CFO had the authority to execute such a waiver.

Finding that there was no factual dispute and that the issue presented a question of law, the trial court denied the motion. It determined that the contract's default clause was a clear waiver of the Tribe's sovereign immunity. The court did not address the Tribe's contention that the CFO lacked the authority to waive its sovereign immunity.

Upon the Tribe's initial appeal of the trial court's order, a motions division of this court ordered the Tribe to show cause why the appeal should not be dismissed for lack of a final judgment. Following review of the parties' responses, the division concluded that this court lacked jurisdiction to consider the appeal pursuant to § 13–4–102, C.R.S.2003, but stated that the trial court's order might be appropriate for C.R.C.P. 54(b) certification. The division granted a limited remand for the Tribe to pursue certification. The trial court then certified its order as a final judgment for purposes of appeal under C.R.C.P. 54(b).

## I.

Upon recertification of this appeal, Rush Creek moved to dismiss for lack of jurisdiction, asserting that the trial court improperly certified its order as a final judgment for purposes of appeal. Determination of that motion was deferred to the panel deciding the merits of the appeal. Hence, we first address that issue, and deny the motion.

■ Relying upon *State Farm Fire & Casualty Co. v. Bellino*, 976 P.2d 342 (Colo.App. 1998), Rush Creek contends that the order denying the Tribe's motion to dismiss did not render a final judgment on any claims for relief raised in its complaint and that the

court's C.R.C.P. 54(b) certification order does not meet the three-part *Bellino* certification test. The Tribe responds that the certification was proper or, alternatively, that its sovereign immunity defense authorizes the appeal. We agree with the Tribe's latter contention and therefore need not address the propriety of the certification.

Tribal sovereign immunity is not merely a defense to liability; rather, it provides immunity from suit. *See Kiowa Tribe of Okla. v. Mfg. Techs., Inc.,* 523 U.S. 751, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Thus, under federal law, the denial of a motion to dismiss based on tribal sovereign immunity is an immediately appealable collateral order, because that immunity would be meaningless if a suit against a tribe were erroneously allowed to proceed to trial. *See Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians,* 63 F.3d 1030 (11th Cir.1995)(analogizing a tribal sovereign immunity claim to a qualified immunity claim); *see also Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985)(a denial of qualified immunity is immediately reviewable as a collateral order because qualified immunity shares the essential attribute of absolute immunity: an immunity from suit rather than simply a defense to liability); *Osage Tribal Council v. United States Dep't of Labor,* 187 F.3d 1174 (10th Cir.1999)(citing *Tamiami* and *Mitchell,* holding that denial of a motion to dismiss based on tribal sovereign immunity is an immediately appealable collateral order).

The appealability under Colorado law of an order denying a motion to dismiss based upon a tribal sovereign immunity defense is an issue of first impression. However, we do not write on a clean slate in this area. In *City of Lakewood v. Brace,* 919 P.2d 231 (Colo.1996), the supreme court held that when the issue presents only a question of law, interlocutory orders denying an individual's qualified immunity defense may be deemed final for purposes of appeal because such a defense is analogous to an absolute immunity defense that provides immunity from suit. In doing so, it noted that such interlocutory appeals are an exception to the general rule under § 13–4–102, C.R.S.2003,

that an appeal cannot be taken from anything other than a final decision. *See Feigin v. Digital Interactive Assocs., Inc.,* 987 P.2d 876 (Colo.App.1999)(citing *City of Lakewood v. Brace, supra,* for its conclusion that the denial of a motion to dismiss on the grounds of qualified immunity, which is normally not reviewable because it is not a final order, is immediately appealable when it is based on a question of law).

Moreover, the right to pursue an interlocutory appeal of a trial court's rejection of a qualified immunity defense exists under Colorado law even though federal law might not mandate its existence. In *Furlong v. Gardner,* 956 P.2d 545 (Colo.1998), the supreme court reaffirmed the *City of Lakewood v. Brace* holding and stated that it would continue to recognize a right to interlocutory appeal in this state, despite the United States Supreme Court's decision in *Johnson v. Fankell,* 520 U.S. 911, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997), that a defendant in a state court case brought under 42 U.S.C. § 1983 did not have a federal right to an interlocutory appeal from a denial of qualified immunity.

The *Fankell* Court reasoned that the Idaho Supreme Court's decision denying the right of interlocutory appeal following the trial court's rejection of a qualified immunity defense relied on a neutral state rule regarding court administration that did not specifically target civil rights claims against the state. But *Furlong* held that it would be a violation of *Fankell's* neutrality principle if Colorado courts simultaneously denied interlocutory appeals when qualified immunity is asserted in a § 1983 case, but allowed appeals in cases raising immunity under the Colorado Governmental Immunity Act (CGIA).

We conclude that disallowing an appeal of the trial court's order rejecting the Tribe's sovereign immunity claim, which is a claim to immunity from suit, but allowing an appeal of interlocutory orders in cases raising immunity under the CGIA or § 1983, would violate the neutrality principles identified in *Fankell* and applied in *Furlong,* and would render any tribal immunity meaningless. *See Osage Tribal Council v. United States Dep't of La-*

*bor, supra; Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians, supra.* Thus, we recognize that an appeal may be taken from an interlocutory order denying a motion to dismiss based on tribal sovereign immunity when the issue presented is one of law, not of fact.

Here, the trial court denied the Tribe's sovereign immunity motion based on a question of law, namely, its interpretation of the parties' contract. Therefore, that decision is final and appealable. *See Furlong v. Gardner, supra.* Accordingly, we deny Rush Creek's motion to dismiss.

## II.

■ While the Tribe contended in its opening brief that the default clause in the contract did not constitute an express waiver of sovereign immunity, *in oral argument it conceded the issue.* Accordingly, we will not address that matter further. However, the Tribe contends that, because the CFO did not have the authority to execute such a waiver, it is ineffective. Rush Creek asserts that, at the minimum, the CFO had apparent authority. We agree with Rush Creek.

■ Although the trial court did not address the issue of the CFO's authority, we may affirm the trial court's ruling based on any grounds that are supported by the record. *See People v. Quintana,* 882 P.2d 1366 (Colo.1994).

## A.

■ The issue of apparent authority is generally an issue of fact to be determined by the trial court. *In re Marriage of Robbins,* 8 P.3d 625 (Colo.App.2000). And when a court's jurisdiction is challenged by means of a C.R.C.P. 12(b)(1) motion and there are contested issues of fact, the trial court must hold an evidentiary hearing to resolve those issues. *Werth v. Heritage Int'l Holdings, PTO,* 70 P.3d 627 (Colo.App.2003)(citing *Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993)).

■ However, if the underlying facts are undisputed, fact finding is not required, and the legal effect of those facts constitutes a question of law. *See Lakeview Assocs., Ltd. v. Maes,* 907 P.2d 580 (Colo.1995).

■ Here, Rush Creek asserts that the facts relevant to apparent authority are undisputed. The Tribe disagrees generally, but points to no specific facts that it contends are in dispute, does not assert that credibility determinations must be made, and does not assert that any additional facts could be developed upon remand. The statement in the Tribal Chairman's affidavit that the CFO did not have authority from the Tribal Council to waive sovereign immunity goes only to disprove *express* authority; it is not relevant in determining the existence of apparent authority, nor does it negate or prohibit the existence of apparent authority.

We therefore conclude that we may address this issue without necessity of a remand to the trial court. *See Lakeview Assocs., Ltd. v. Maes, supra.*

## B.

The Tribe contends that its Constitution designates the Tribal Council as its governing body with exclusive powers over tribal matters, which include its right to waive sovereign immunity. As noted, the Tribe presented an affidavit from the Chairman of its Tribal Council, stating that the Tribal Council never gave authority to waive the Tribe's sovereign immunity to the CFO or any other tribal officer. The Tribe admits that the CFO was authorized to contract on its behalf, but argues that such authorization does not extend to the power to waive sovereign immunity.

Rush Creek contends that even if the CFO did not have express authority to waive the Tribe's sovereign immunity, at the least he had apparent authority to do so. Rush Creek asserts that, because the Tribe's Constitution is silent as to the requisite procedures for waiving sovereign immunity, it was justified in relying on the CFO's apparent authority to agree to such a waiver.

The Tribe responds that the authority for such a waiver cannot be implied. Instead, relying upon *World Touch Gaming, Inc. v. Massena Management, LLC,* 117 F.Supp.2d 271 (N.D.N.Y.2000), the Tribe asserts that

the authority to waive sovereign immunity cannot exist in anyone other than Congress or a tribe unless such authority to waive is expressly granted. We disagree.

To the extent *World Touch* might stand for the Tribe's proposition that the authority to waive sovereign immunity, like the waiver itself, may not be implied, we disagree with the analysis in that case. In *World Touch,* the Indian tribe gave a third party managing its casino the ability to enter into contracts on its behalf, after which the third party executed a contract purporting to waive the tribe's sovereign immunity. The tribe's constitution expressly stated that only the tribal council could waive sovereign immunity. The court held that, despite any authority, express or otherwise, that the third party had to bind the tribe to a contract, it was insufficient to authorize the third party to waive the tribe's sovereign immunity. The court supported its holding by citing *Merrion v. Jicarilla Apache Tribe,* 455 U.S. 130, 102 S.Ct. 894, 71 L.Ed.2d 21 (1982), and *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), which concluded that waivers of sovereign immunity must be clear and express. The *World Touch* court thereby implied that, like a waiver itself, the authority to waive must also be expressly granted.

We do not read *Merrion* and *Santa Clara Pueblo* to mean that, because waivers of sovereign immunity must be express, the authority to sign admitted waivers cannot be established by apparent authority. Moreover, the Tribe has not cited, nor are we aware of, any other published cases that so state. Instead, in part because nothing in the Tribe's Constitution expressly speaks to the issue or refutes or prohibits it, we conclude that the general laws of agency govern here. *See Richman v. Sheahan,* 270 F.3d 430 (7th Cir.2001)(agency principles are applicable in determining sovereign immunity issues); *Finnie v. Jefferson County Sch. Dist. R–1,* 79 P.3d 1253 (Colo.2003)(principles of agency considered in determining compliance with CGIA).

## C.

■ An agency "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *City & County of Denver v. Fey Concert Co.,* 960 P.2d 657, 660 (Colo. 1998); Restatement (Second) of Agency § 1(1) (1958).

■ Apparent authority, also referred to as agency by estoppel, is not actual or express authority, but is created by operation of law. *Moore v. Switzer,* 78 Colo. 63, 239 P. 874 (1925). Such authority is established by evidence of "written or spoken words or other conduct of the principal which, reasonably interpreted, causes a person to believe that the principal consents to have the act done on his behalf by a person purporting to act for him." *Lucero v. Goldberger,* 804 P.2d 206, 209 (Colo.App.1990)(emphasis omitted). Apparent authority is created to protect third parties who, in good faith, rely upon their belief that an agency relationship exists between the apparent principal and agent. *Sigel–Campion Live Stock Comm'n Co. v. Ardohain,* 71 Colo. 410, 207 P. 82 (1922); *In re Marriage of Robbins, supra.*

■ An agent can make the principal responsible for his or her actions if the agent is acting pursuant to apparent authority, regardless of whether the principal has knowledge of the agent's conduct. *Willey v. Mayer,* 876 P.2d 1260 (Colo.1994); *Life Investors Ins. Co. v. Smith,* 833 P.2d 864, 868 (Colo. App.1992); Restatement (Second) of Agency §§ 26–27.

Here, the record reveals that the following facts are undisputed. At all relevant times, the CFO was authorized to enter into contracts on behalf of the Tribe. The contract at issue here designates the Tribe as the customer. The CFO signed the contract on behalf of the customer on a line above the statement, "authorized signature." The Tribe's Constitution and personnel policy are silent concerning procedures for signing contracts, waiving sovereign immunity, or authorizing persons to sign waivers. Rush Creek and the Tribe performed their respective obligations to furnish computer services and make payment under the contract for eigh-

teen months before the dispute in this case arose.

When, as here, a person has authority to sign an agreement on behalf of a sovereign, it is assumed that the authority extends to a waiver of immunity contained in the agreement. *See* Restatement (Third) of the Law of Foreign Relations of the United States § 456 cmt. b (1987); *see also C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001)(citing Restatement § 456 and noting that the law governing waivers of immunity by foreign sovereigns is helpful in deciding tribal sovereign immunity issues); *Smith v. Hopland Band of Pomo Indians*, 95 Cal.App.4th 1, 115 Cal.Rptr.2d 455 (2002)(citing Restatement provision). Nothing in this record negates that assumption; in fact, the silence of the Tribe's Constitution and personnel policy concerning sovereign immunity and waivers reinforces it.

The words, actions, and other described conduct of the Tribe, reasonably interpreted, would and did cause Rush Creek to believe that the Tribe consented to have the contract and waiver signed on its behalf by the CFO. The CFO held himself out as the Tribe's agent and acted at least with apparent authority in assenting to the contract and the waiver therein. Rush Creek relied to its detriment upon the apparent authority of the CFO. Hence, we conclude as a matter of law that the CFO had apparent authority to sign the contract and waive the Tribe's sovereign immunity.

In light of this determination, we need not address the remaining contentions of the parties.

The motion to dismiss is denied, the order is affirmed, and the case is remanded to the trial court for further proceedings.

Chief Judge DAVIDSON and Judge PIERCE * concur.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2003.