# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 7, 2008          Decided July 25, 2008

No. 07-7050

LA REUNION AERIENNE,
APPELLEE

v.

SOCIALIST PEOPLE'S LIBYAN ARAB JAMAHIRIYA AND
LIBYAN EXTERNAL SECURITY ORGANIZATION,
APPELLANTS

Appeal from the United States District Court
for the District of Columbia
(No. 05cv01932)


*Arman Dabiri* argued the cause and filed the briefs for appellants.

*Christopher B. Kende* argued the cause and filed the brief for appellee.

Before: SENTELLE, *Chief Judge*, and GINSBURG and BROWN, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* SENTELLE.

SENTELLE, *Chief Judge*: Defendant-appellants, Socialist People's Libyan Jamahiriya and the Libyan External Security Organization ("LESO") (hereinafter collectively "Libya"), bring this interlocutory appeal from an order of the district court denying in part their motion to dismiss. Plaintiff-appellee La Réunion Aérienne ("LRA"), a French partnership representing the interests of a group of insurance companies, brought suit against Libya alleging that it had made compensation payments to certain survivors and estates of victims of the bombing of a French airliner over Africa. The suit further alleged that Libya was responsible for the bombing and that, after making the compensation payments, LRA took an assignment of, and became subrogated to, the rights of the survivors and estates of the victims. Libya filed a motion seeking to dismiss the suit for lack of subject-matter jurisdiction, arguing that the district court did not have jurisdiction under § 1605(a)(7) of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, upon which plaintiffs relied. In its motion Libya also, *inter alia*, sought a determination by the court that punitive damages were not available to LRA, and complained that service of process upon a group of individual defendants was not proper. The district court, *inter alia*, determined that the court had subject-matter jurisdiction over the plaintiff's claims, declined to presently address the question of punitive damages, and rejected the argument that service of process had not been properly effected. We conclude that the issues of punitive damages and service of process are not properly before us and therefore dismiss so much of the appeal as raises those issues. As for the issue of subject-matter jurisdiction, we find that the district court has subject-matter jurisdiction over LRA's claims and therefore affirm the district court's determination on that issue.

## BACKGROUND

In September of 1989 a French airliner exploded over Niger, Africa, killing all on board including seven Americans. LRA apparently insured certain risks in connection with the airliner and subsequently paid, for personal injury and death, approximately two million dollars to survivors and estates of the seven deceased Americans. After an investigation implicated the Libyan government in planting a bomb on the airliner, LRA filed a complaint in the district court against Libya and non-appellants Muammar Qadhafi and six high ranking Libyan government officials in their personal capacities, seeking, *inter alia*, indemnification of the two million dollars and punitive damages. In general, foreign states are immune from suit in the United States pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* (Supp. V. 2005). But §§ 1605-1607 of the FSIA give federal district courts jurisdiction over suits against foreign states in certain enumerated categories of cases. LRA in its complaint asserted that the district court had jurisdiction over its suit pursuant to § 1605(a)(7), the so-called "terrorism exception" to foreign sovereign immunity. In pertinent part, that exception provides for no immunity from American jurisdiction for foreign states in cases in which "money damages are sought against a foreign state for personal injury or death that was caused by an act of . . . aircraft sabotage." The exception also states that immunity for the foreign state is not waived if in such a case "neither the claimant nor the victim was a national of the United States." LRA further argued in its complaint that it was entitled to bring suit against Libya because, by reason of the two million dollars in payments and relevant insurance policies, it took assignment of, and became subrogated to, the rights of the American decedents.

After suit was filed, LRA filed a motion seeking permission for alternative service of process on the six individual

defendants. Libya also filed a motion arguing that the case should be dismissed for lack of subject-matter jurisdiction because under the terrorism exception it is not open to suit as LRA is not a national of the United States and as LRA is an assignee/subrogee and so cannot sue Libya for personal injury or death. Libya also claimed, *inter alia*, that LRA could not seek punitive damages against it and that service of process was not properly effected on the individual defendants.

The district court disposed of LRA's motion for alternative service of process in an order which allowed service to be made on LESO and the individual defendants in their personal capacities by way of mail on Libya's counsel of record, who the court noted was also counsel of record for the individual defendants in their official capacities. In a Memorandum Opinion, *La Réunion Aérienne v. Libya*, 477 F. Supp. 2d 131 (D.D.C. 2007), the court disposed of the remaining motions at issue. The court rejected Libya's claims that the court lacked subject-matter jurisdiction under the FSIA because LRA was an assignee/subrogee of the families and estates of the victims and LRA was not a "national" of the United States. The court deferred making a determination on the punitive damages claim and rejected Libya's argument that service of process was not properly effected.

Libya now brings this interlocutory appeal, arguing that the district court's decisions concerning subject-matter jurisdiction, punitive damages, and service of process should be overturned.

## DISCUSSION

We must first determine whether the issues on appeal are properly before us; in so doing we conclude that, although the issue of subject-matter jurisdiction is properly before us, the issues of punitive damages and service of process are not.

5

I.  Service of process and punitive damages issues

Libya claims that the district court erred in allowing LRA to make service of process on the individual defendants in their personal capacities.  In allowing service of process, Libya asserts that the district court ignored the Federal Rules of Civil Procedure, constitutional due process requirements, as well as a stipulation agreed to by the parties.  LRA replies that the individual defendants are not parties to this appeal and that service of process affected only them; as such, argues LRA, Libya may not raise this issue on appeal as it is of no concern to it.  In other words, LRA contends that Libya does not have standing to bring the issue before us.  We agree.  A necessary (albeit insufficient) requirement needed to support standing is for the claimed injury to affect the complaining party "in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992).  Here, Libya's claim that the individual defendants do not have actual notice of the case in that they were not properly served, and that therefore the district court is without personal jurisdiction over the individual defendants, does not affect Libya personally or otherwise.  Consequently, Libya does not have standing to appeal the district court's service of process decision.

The district court declined to presently determine whether punitive damages were available to LRA, stating that the determination would depend in part on unresolved choice-of-law issues, and further stating that the parties were to address the issue in light of *Philip Morris USA v. Williams*, 127 S. Ct. 1057 (2007). *La Réunion Aérienne*, 477 F. Supp. 2d at 137.  Libya argues on appeal that the district court's refusal to address whether punitive damages are available to LRA is erroneous because the issue is to be determined pursuant solely to the FSIA.  But Libya is not in a position to make this argument.  In its Memorandum Opinion and Order the district court noted that

"[p]laintiff[] concede[s] that punitive damages are available, if at all, only against the individual defendants sued in their personal capacities."[1]  *Id.* at 137 n.7.  The court deferred consideration of the availability of punitive damages against the individual defendants who, as we noted above, are not parties to this appeal.  Libya therefore also does not have standing to appeal the district court's decision on punitive damages.

## II.  Issue of subject-matter jurisdiction

### A.  Appellate jurisdiction

Whether we have jurisdiction on this interlocutory appeal over the district court's decision on subject-matter jurisdiction is somewhat more involved.  First, we are not persuaded by LRA's contention that the subject-matter jurisdiction issue here is really "whether LRA is a proper plaintiff in such an action against Libya."  LRA argues that although Libya labels this issue as one of sovereign immunity, the issue is actually one "of standing for LRA as a plaintiff" and standing is not an issue that falls within the collateral order exception to the finality rule.  We note, however, that in the proceedings below Libya moved to dismiss LRA's complaint for lack of subject-matter

---

[1]We note that plaintiff's concession regarding punitive damages applies only to its claims filed under the 1996 Amendment to the Foreign Sovereign Immunities Act of 1976.  Pub. L. No. 104-132, § 221, 110 Stat. 1214, 1241-42, repealed by national Defense Authorization Act for Fiscal Year 2008, Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338-44 (codified at 28 U.S.C. § 1605A); *see Simon v. Republic of Iraq*, No. 06-7175, slip op. at 7 (D.C. Cir. June 24, 2008) (holding that "the courts retained jurisdiction over cases pending pursuant to [the 1996 amendment] when the Congress enacted the [new terrorism exception]").  It does not apply to any claim that may be filed under the newly enacted terrorism exception to foreign sovereign immunity codified at 28 U.S.C § 1605A.

jurisdiction based on foreign sovereign immunity, and that in its disposition of the motion the district court in fact decided not whether LRA had standing, but that Libya does not have foreign sovereign immunity.

Ordinarily, appeals cannot be taken from the district court to the courts of appeals until final judgment. *See Behrens v. Pelletier*, 516 U.S. 299, 305 (1996). There is, however, "a 'small class' of district court decisions that, though short of final judgment, are immediately appealable because they 'finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Id*. (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). For this collateral order exception to apply, the Supreme Court has instructed that the district court's decision must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).

Our task, then, is to determine whether the district court's subject-matter jurisdiction decision satisfies the three prongs of the collateral order exception under *Coopers & Lybrand*. The decision easily meets the first two prongs because it conclusively determines the issue of subject-matter jurisdiction and that issue is separate from the merits. As to whether the decision is effectively unreviewable on appeal from final judgment, we note that the issue here is subject-matter jurisdiction based on *sovereign immunity*. We have observed previously that "'sovereign immunity is an immunity from trial and the attendant burdens of litigation . . .'" *Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 443

(D.C. Cir. 1990) (quoting *Rush-Presbyterian-St. Luke's Med. Ctr. v. Hellenic Republic*, 877 F.2d 574, 576 n.2 (7th Cir. 1989)). This is so because when the issue is jurisdictional immunity, "appeal from final judgment cannot repair the damage that is caused by requiring the defendant to litigate." *Rein v. Socialist People's Libyan Arab Jamahiriya*, 162 F.3d 748, 756 (2d Cir. 1998). Consequently, "[t]he denial of a motion to dismiss on the ground of sovereign immunity satisfies all three [*Coopers & Lybrand*] criteria, and is therefore subject to interlocutory review." *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C. Cir. 2004). LRA nevertheless argues that the issue does not fall within the collateral order exception because Libya's claim concerns only whether LRA can assert the same claims that its assignors and subrogors can assert, and an appeal of that issue would not involve the avoidance of a trial that would "imperil a substantial public interest," *Will v. Hallock*, 546 U.S. 345, 353 (2006), and therefore is not effectively unreviewable if left until a later time. But LRA mischaracterizes Libya's claim, which in essence rests on immunity from suit as a foreign sovereign. In sum, we conclude that the third prong of the collateral order exception under *Coopers & Lybrand* is satisfied and consequently we have jurisdiction over the issue on this interlocutory appeal.

B. District court jurisdiction

Libya contends that the district court does not have subject-matter jurisdiction over LRA's claims. This contention is founded on two arguments concerning the interpretation of the FSIA terrorism exception.

Libya first argues that the district court lacks subject-matter jurisdiction over LRA's claims because the FSIA prohibits claims by third-party corporate claimants. In support of this argument Libya contends that because the claims were assigned

to LRA they are no longer for "money damages . . . for personal injury or death" pursuant to the FSIA, but rather for money damages for payments made to the victims' families and estates under commercial contracts of insurance underwritten by LRA. Libya claims that as such, the causes of action asserted by LRA do not arise under the FSIA but rather arise under commercial contracts of insurance against liability. Libya also contends that the district court ignored language in the terrorism exception which states that immunity is not waived if "neither the claimant nor the victim was a national of the United States (as that term is defined in . . . the Immigration and Nationality Act)." *See* 28 U.S.C. § 1605 (a)(7)(B)(ii). Since the Immigration and Nationality Act defines "national of the United States" as "a citizen of the United States," 8 U.S.C. § 1101(a)(22), Libya argues that the terrorism exception does not allow for third-party corporate claimants but rather limits the category of claimants to individuals who are nationals of the United States.

We disagree with Libya's analysis. First, Libya misses the link that the payments made by LRA to the victims' families and their estates were *for money damages for the deaths of the victims*, i.e., for the same claims for money damages that the families and their estates could make directly against Libya under the FSIA. As the district court noted, when bringing suit in these circumstances, third-party insurers such as LRA "step into the shoes" of the victims' families and their estates. Furthermore, the language of § 1605(a)(7) is clear on its face: if "neither the claimant nor the victim was a national of the United States" at the time of the terrorist act, immunity is not waived. In other words, if either the claimant or the victim is a national of the United States, then immunity is waived. Here, there is no dispute that the victims were United States nationals; therefore, Libya's sovereign immunity is not a bar to LRA's claims because it is waived.

Libya next argues that the district court lacks subject-matter jurisdiction over LRA's claims because, as an assignee/subrogee, LRA's claims do not come under the FSIA. Since the FSIA is the sole basis for district court subject-matter jurisdiction, argues Libya, for the district court to create subject-matter jurisdiction by "rely[ing] upon the state common law principles of subrogation and assignment, which are outside of the FSIA, is clearly erroneous." Libya has a valid point insofar as "the meaning of the term" "personal injury" is "by definition a federal question." *Molzof v. United States*, 502 U.S. 301, 305 (1992) (interpreting the punitive damages bar in the Federal Tort Claims Act). However, when "Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *Id.* at 307. Thus, we must ask what is considered a "personal injury" claim under "traditional common-law principles." *Id.* at 312.

It is well established that the assignee or subrogee owns "the substantive right" of the claimant. *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 381 (1949) (insurer suing the United States as assignee of a personal injury claim); *see also Dow Chem. Corp. v. Weevil-Cide Co., Inc.*, 897 F.2d 481, 484 (10th Cir. 1990) ("[T]he claim of a . . . subrogee is not a separate cause of action from the right held by the subrogor, but is derivative of the underlying claim which the subrogor held against the subrogation defendant.") (internal citation and quotation marks omitted); *City of Hope Nat'l Med. Ctr. v. Healthplus, Inc.*, 156 F.3d 223, 228 (1st Cir. 1998) ("It is generally understood that the assignee acquires rights similar to those of the assignor, and is put in the same position with reference to those rights as that in which the assignor stood at the time of assignment.") (citation and internal quotation marks omitted); *Moore v. Hechinger*, 127 F.2d 746, 748 (D.C. Cir. 1942) ("[A]cceptance of compensation . . . operates an absolute

transfer to the employer of the substantive rights of the injured employee."). Of course, state law will often determine whether a person is in fact an assignee or subrogee. *See*, *e.g.*, *Aetna Casualty & Surety*, 338 U.S. at 368 (assignment occurred by operation of New York law as a result of the employee's inaction). Regardless, jurisdiction under § 1605(a)(7) depends on what is "*legally* considered" a personal injury claim "under traditional common-law principles," *Molzof*, 502 U.S. at 312 (emphasis in original), and a validly assigned or subrogated personal injury claim certainly qualifies. Therefore, claims may be brought by assignees/subrogees of the victims' families and their estates, such as LRA, against a subrogation defendant, such as Libya, under the FSIA.

\* \* \* \* \* \* \* \* \*

Before concluding we must address one final issue. On January 28, 2008, while this appeal was pending, the President signed the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"), Pub. L. No. 110-181, 122 Stat. 3. Section 1083 of the NDAA strikes § 1605(a)(7) of the FSIA from the U.S. Code and replaces it with a new "[t]errorism exception to the jurisdictional immunity of a foreign state." 122 Stat. at 338–44 (codified at 28 U.S.C. § 1605A). This statutory change raised questions about the application of § 1605A to pending cases such as this one and whether § 1605(a)(7) continues to apply to them. We settled this issue in *Simon v. Republic of Iraq*, __ F.3d __ (D.C. Cir. 2008), in which we held that we "retained jurisdiction over cases pending pursuant to former § 1605(a)(7) when the Congress enacted the NDAA." *Id.* at __.

## CONCLUSION

We affirm the district court's denial of Libya's motion to dismiss on the ground of sovereign immunity. We dismiss the

appeal with regard to the other issues raised by Libya.