Opinion by CHIEF JUDGE DAVIDSON
¶ 1 This is an interlocutory appeal of a trial court order denying motions to dismiss a breach of contract action brought against a foreign entity. We dismiss the appeal in part, affirm in part and remand.
¶ 2 Kukkiwon is a South Korean organization that promotes the martial art of Taekwondo. It initially existed as a nongovernmental entity, and so constituted, it contracted with plaintiffs, United States Taekwondo Committee and U.S. Kukkiwon, making plaintiffs its overseas branch in the United States.
*784 ¶ 3 Shortly after the contract with plaintiffs was formed, the South Korean government passed a law making Kukkiwon a "special corporation," and giving the South Korean Minister of Culture, Sports, and Tourism authority over several of Kukkiwon's activities. Subsequently, Kukkiwon notified plaintiffs that it was unilaterally cancelling the contract, and plaintiffs filed this action for breach. Defendant here is Kukkiwon as it currently exists as a "special corporation."
¶ 4 In response to plaintiffs' claim, defendant filed separate motions to dismiss for lack of subject matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA), and on the ground that the act of state doctrine precluded the trial court from adjudicating plaintiffs' claim. The FSIA grants sovereign immunity to foreign states under particular circumstances. See 28 U.S.C. §§ 1603 - 1605 (2006 & Supp.2011). The act of state doctrine, by federal common law, limits the ability of United States courts to adjudicate a foreign sovereign's public acts. See W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l, 493 U.S. 400, 404, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990).
¶ 5 In the interest of judicial economy, the parties and the court agreed to combine the trial on plaintiffs' contract claim and the evidentiary hearing on defendant's motions to dismiss into a single hearing. Before the bench trial on the contract claim was completed, however, the court issued its ruling denying defendant's motions to dismiss, concluding that defendant was not entitled to dismissal based on the FSIA or the act of state doctrine.
¶ 6 Defendant immediately filed a notice of appeal and plaintiffs countered with a motion to dismiss the appeal for lack of appellate jurisdiction. Plaintiffs' motion was deferred to us by this court's motions division. Further trial on the contract claim has been stayed pending this appeal.
¶ 7 We first address plaintiffs' argument that because defendant's appeal is interlocutory, we lack jurisdiction to consider it. We disagree in part. We conclude that we have jurisdiction to address defendant's appeal from the trial court's FSIA immunity ruling, but not from the portion of the ruling pertaining to the act of state doctrine. We then address the merits of defendant's FSIA immunity appeal and conclude that the court properly denied defendant's motion to dismiss based on FSIA immunity.
I. The trial court's FSIA immunity ruling is immediately appealable.
¶ 8 We conclude that we have jurisdiction to address the trial court's FSIA immunity ruling on interlocutory appeal.
A. Our jurisdiction is governed by section 13-4-102(1), C.R.S.2012.
¶ 9 The FSIA is a federal statute that provides immunity to any "agency or instrumentality" of a foreign state unless, as pertinent here, the claim is based on "commercial activity." 28 U.S.C. §§ 1603, 1604, 1605(a)(2) (2006). Federal law governs the application of the FSIA. See Verlinden B.V. v. Cent. Bank of Nigeria, 461 U.S. 480, 497, 103 S.Ct. 1962, 76 L.Ed.2d 81 (1983). However, to determine our jurisdiction, even when, as here, the substantive issues are governed by federal law, we apply our appellate jurisdiction statute, section 13-4-102(1). See Johnson v. Fankell, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) (when deciding whether it has jurisdiction over appeal from state court ruling on federal qualified immunity, state appellate court applies its own appellate jurisdiction statute and its own interpretation of the terms therein); Furlong v. Gardner, 956 P.2d 545, 550 (Colo.1998) (following Johnson, 520 U.S. 911, 117 S.Ct. 1800 ).
¶ 10 Our statute permits appeals only from "final judgments." § 13-4-102(1). We are aware of no Colorado appellate decision that has addressed whether we may review, as a "final judgment" under section 13-4-102(1), an interlocutory appeal from a ruling denying FSIA immunity. However, Colorado law directs that, under these circumstances, we may look to federal authority interpreting the federal appellate jurisdiction statute, 28 U.S.C. § 1291 (2006), for guidance. See Furlong, 956 P.2d at 551-52 ( 28 U.S.C. § 1291 permits appeals from "final decisions" and is therefore analogous to section 13-4-102(1) ).
*785 ¶ 11 No party argues that section 13-4-102.1, C.R.S.2012, permitting this court under very particular circumstances to exercise discretionary jurisdiction over interlocutory appeals, is applicable here because none of the requisite procedures have been followed.
B. In the federal courts, FSIA immunity rulings are immediately appealable as "final decisions" pursuant to the federal appellate jurisdiction statute and the collateral order doctrine.
¶ 12 The federal collateral order doctrine is a "practical construction" of the finality required by 28 U.S.C. § 1291, and permits, under highly circumscribed situations, interlocutory review of a trial court ruling even if the ruling is not the last decision issued in the case. Will v. Hallock, 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006).
¶ 13 Pursuant to the collateral order doctrine, to be immediately appealable a decision must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) ; see also Cohen v. Beneficial Indus. Loan Corp ., 337 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (there are some decisions that "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated").
¶ 14 Under federal law, FSIA immunity is immunity from suit and is effectively lost if a case is allowed to go to trial. See, e.g., La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya, 533 F.3d 837, 843 (D.C.Cir.2008) (FSIA orders satisfy collateral order doctrine because " 'appeal from final judgment cannot repair the damage that is caused by requiring the defendant to litigate' " (quoting Rein v. Socialist People's Libyan Arab Jamahiriya, 162 F.3d 748, 756 (2d Cir.1998) )); Phoenix Consulting, Inc. v. Republic of Angola, 216 F.3d 36, 39 (D.C.Cir.2000) (FSIA immunity must be resolved "as early in the litigation as possible; to defer the question is to frustrate the significance and benefit of entitlement to immunity from suit" (internal quotation marks omitted)). Particularly because it involves federal government relations with foreign governments, Congress intended to have FSIA immunity determined promptly. See Compania Mexicana De Aviacion, S.A. v. U.S. Dist. Court, 859 F.2d 1354, 1358 (9th Cir.1988) (reviewing legislative history of FSIA).
¶ 15 Thus, federal courts consistently hold that FSIA immunity rulings are immediately appealable under the collateral order doctrine as (1) conclusive and final to the issue of foreign sovereign immunity, (2) distinct and severable from the issue of liability on the claim asserted in the complaint, and (3) effectively unreviewable on appeal because the asserted immunity is lost if the case improperly proceeds to trial. See, e.g., Southway v. Cent. Bank of Nigeria, 198 F.3d 1210, 1214 (10th Cir.1999) ("The denial of a claim to sovereign immunity is immediately appealable under the collateral order doctrine."); Jungquist v. Sheikh Sultan Bin Khalifa Al Nahyan, 115 F.3d 1020, 1025 (D.C.Cir.1997) (under federal law, it is "well-established that an appeal from a denial of a motion to dismiss a complaint on the ground of sovereign immunity under the FSIA satisfies the three requirements of the collateral order doctrine and may thus be brought on an interlocutory basis").
C. Guided by Furlong, 956 P.2d 545, we conclude that FSIA immunity rulings are immediately appealable in Colorado as "final judgments" within the meaning of our appellate jurisdiction statute.
¶ 16 In Furlong, the supreme court recognized that federal courts, applying the federal appellate jurisdiction statute, permit interlocutory appeal from a trial court's denial of summary judgment based on qualified immunity in 42 U.S.C. § 1983 (2006) cases, as long as the trial court's denial is based on a question of law. 956 P.2d at 552. Although our appellate jurisdiction is governed by section 13-4-102(1), the supreme court concluded that principles of neutrality and sound *786 appellate practice compelled it to follow the practice of the federal courts and allow certain interlocutory appeals based on qualified immunity in § 1983 cases to be brought in our court. Furlong, 956 P.2d at 550-52.
¶ 17 The supreme court emphasized that under the Colorado Governmental Immunity Act (CGIA), section 24-10-108, C.R.S.2012, an interlocutory appeal from a sovereign immunity ruling was expressly permitted and, thus, the "principle of neutrality would be violated by providing interlocutory review of sovereign immunity claims in CGIA cases but not in § 1983 cases." Furlong, 956 P.2d at 551.
¶ 18 Acknowledging that the finality requirement in section 13-4-102(1) is analogous to that in 28 U.S.C. § 1291, the supreme court also concluded that permitting immediate appeal from qualified immunity rulings based on questions of law was sound appellate practice because appellate courts are well positioned to review such rulings. Furlong, 956 P.2d at 551-52 (citing Lowery v. Ford Hill Inv. Co., 192 Colo. 125, 129-30, 556 P.2d 1201, 1204 (1976) ("[I]nsofar as the provisions and purposes of our statute parallel those of the federal enactments, such federal authorities are highly persuasive.")).
¶ 19 As an issue of first impression in Colorado, we apply the Furlong analysis to determine whether we should review, on interlocutory appeal, an order denying FSIA immunity. Plaintiffs argue that, like interlocutory appeals from § 1983 qualified immunity rulings based on disputed facts, we may not address FSIA immunity rulings on interlocutory appeal because they often turn on resolution of factual, not legal issues. We disagree, and conclude that, based on principles of neutrality and sound appellate practice, we have jurisdiction to immediately review a trial court's FSIA immunity ruling, and will exercise it here.
1. Principles of Neutrality
¶ 20 Because FSIA immunity is available to any "agency or instrumentality of a foreign state" unless the action is based on "commercial activity," 28 U.S.C. §§ 1603, 1604, 1605(2)(a), most FSIA immunity determinations involve factual inquiries. Consequently, federal district court procedure requires that FSIA immunity be resolved early in the trial proceedings, by evidentiary hearing if necessary, to decide the factual issues. See Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek , 600 F.3d 171, 175 (2d Cir.2010) (in deciding FSIA immunity issue, "district court may look to evidence outside the pleadings and hold an evidentiary hearing, if it believes one is warranted"); Moran v. Kingdom of Saudi Arabia , 27 F.3d 169, 172 (5th Cir.1994) (in determining jurisdictional immunity under the FSIA, "court is given the authority to resolve factual disputes, along with the discretion to devise a method for making a determination with regard to the jurisdictional issue .... which may include considering affidavits, allowing further discovery, hearing oral testimony, conducting an evidentiary hearing").
¶ 21 A Colorado trial court, in deciding a motion to dismiss on the basis of FSIA immunity, follows federal procedure. See Air Wis. Airlines Corp. v. Hoeper, 2012 CO 19, ¶ 18, 320 P.3d 830, 2012 WL 907764 ("Colorado courts follow federal procedure when deciding immunity under federal law."). Therefore, a Colorado trial court's FSIA immunity ruling, as here, usually requires the court to resolve disputed factual issues following an evidentiary hearing.
¶ 22 Importantly, this procedure is nearly identical to that required in Colorado trial courts when deciding sovereign immunity under the CGIA. See Trinity Broad. of Denver, Inc. v. City of Westminster, 848 P.2d 916, 924-26 (Colo.1993) (court may hold evidentiary hearing and resolve factual disputes relevant to motion to dismiss based on CGIA immunity). The CGIA also explicitly allows for an interlocutory appeal of any ruling determining the question of sovereign immunity, regardless of whether the trial court conducted an evidentiary hearing to resolve factual issues before issuing the ruling. See § 24-10-108 ; Springer v. City & Cnty. of Denver, 13 P.3d 794, 798 (Colo.2000) (for appeals from CGIA sovereign immunity rulings, appellate court reviews legal issues de novo, but if issue involves factual dispute, court reviews for clear error).
*787 ¶ 23 Thus, refusing to consider interlocutory appeals from orders denying FSIA immunity because the court resolved factual issues before issuing the order, while allowing interlocutory appeals from orders addressing CGIA sovereign immunity where the trial court followed a similar procedure, would, as in Furlong, violate neutrality principles. See also Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe, 107 P.3d 402, 405 (Colo.App.2004) (allowing interlocutory appeal from qualified immunity and CGIA immunity rulings, while prohibiting appeals from tribal sovereign immunity rulings "would violate the neutrality principles identified in Fankell and applied in Furlong ").
2. Sound Colorado Appellate Practice
¶ 24 Appellate courts are ill-equipped to resolve factual disputes. See Martinez v. Reg'l Transp. Dist., 832 P.2d 1060, 1061 (Colo.App.1992) ("There is no principle more fundamental to appellate jurisprudence than the maxim that an appellate court does not decide the facts.... ").
¶ 25 However, as discussed above, trial courts are to resolve disputed issues of fact before ruling on FSIA immunity. Thus, to resolve an interlocutory appeal from an FSIA immunity ruling, an appellate court need only determine, based on the facts found by the trial court after the evidentiary hearing, whether a defendant has satisfied the statutory requirements of FSIA immunity. Appellate courts routinely conduct this type of inquiry. See generally Dep't of Transp. v. First Place, LLC, 148 P.3d 261, 264 (Colo.App.2006) ("We review de novo the trial court's application of legal principles to the facts."). Therefore, an appellate court, using the proper standard of review, is well positioned to immediately review a FSIA immunity ruling. See Hansen v. PT Bank NegaraIndon. (Persero), TBK , 601 F.3d 1059, 1062 (10th Cir.2010) (federal appellate court reviews ultimate FSIA immunity determination de novo, reviewing factual findings attendant to ultimate determination for clear error); see also Springe r, 13 P.3d at 798 (for appeals from CGIA sovereign immunity rulings, appellate court reviews legal issues de novo, but if issue involves factual dispute, court reviews for clear error).
¶ 26 Moreover, when a court denies summary judgment based on qualified immunity in a § 1983 case because of disputed factual issues, it effectively reserves ruling on whether qualified immunity exists until those factual disputes are resolved at trial. In that circumstance, because such a ruling does not finally resolve the issue of qualified immunity, it makes little sense for an appellate court to address it on interlocutory appeal. In contrast, because the trial court resolves all relevant factual issues before ruling on FSIA immunity, its ruling finally resolves that issue, rendering the appellate court as well positioned at that point to review the FSIA immunity ruling as it would be after a final judgment on the merits. See Furlong, 956 P.2d at 552 (sound appellate practice to address interlocutory appeal when "court of appeals is as well positioned at that point in time to review the trial court's ruling as it would be at any subsequent point in the proceedings").
¶ 27 We also disagree with plaintiffs' argument that it would not be sound appellate practice to assert interlocutory jurisdiction over the FSIA immunity ruling here because defendant has already participated in a trial on the merits of the breach of contract claim. The record shows that the trial has not been completed, and more importantly, that defendant explicitly preserved its FSIA immunity defense when it agreed, for purposes of judicial economy, to address its motions to dismiss and the merits of the contract claim at the same hearing. Moreover, the record shows that defendant filed this appeal immediately upon receiving the court's denial of its motions.
II. The trial court's act of state ruling is not immediately appealable.
¶ 28 In response to plaintiffs' jurisdictional challenge, defendant argues that we may address the trial court's act of state ruling as an immediately appealable collateral order, or, alternatively, by exercising pendent appellate jurisdiction. We disagree with both arguments. Unlike the appeal from the ruling denying FSIA immunity, we do not have *788 jurisdiction to consider defendant's interlocutory appeal from the trial court's act of state ruling.
A. Act of state rulings are not immediately appealable as "final judgments" within the meaning of section 13-4-102(1).
¶ 29 As above, section 13-4-102(1) governs our jurisdiction, but we may look to federal authority construing the similar federal appellate jurisdiction statute for guidance. See Furlong, 956 P.2d at 551.
1. In the federal courts, act of state rulings are not immediately appealable pursuant to 28 U.S.C. § 1291 and the collateral order doctrine.
¶ 30 The act of state doctrine is a federal common law rule rooted in the constitutional separation of powers. See Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (act of state doctrine "arises out of the basic relationships between branches of government in a system of separation of powers"); see also W.S. Kirkpatrick & Co, Inc., 493 U.S. at 404, 110 S.Ct. 701 ("We have more recently described [the act of state doctrine], however, as a consequence of the domestic separation of powers, reflecting 'the strong sense of the Judicial Branch that its engagement in the task of passing on the validity of foreign acts of state may hinder' the conduct of foreign affairs." (quoting Sabbatino, 376 U.S. at 423, 84 S.Ct. 923 )). The doctrine prevents American courts from judging the legality of a foreign sovereign's public acts taken in its own territory. See W.S. Kirkpatrick & Co ., 493 U.S. at 405, 110 S.Ct. 701.
¶ 31 But, unlike FSIA immunity, the protection afforded by the act of state doctrine does not implicate a court's subject matter jurisdiction nor does it provide immunity from suit. See Transamerica Leasing, Inc. v. La Republica de Venezuela, 200 F.3d 843, 855 (D.C.Cir.2000) (act of state protection "is not strictly an immunity from suit"); Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines, 965 F.2d 1375, 1387 (5th Cir.1992) (act of state defense does not affect jurisdiction). Thus, federal court decisions addressing the issue hold that act of state rulings are not immediately appealable pursuant to 28 U.S.C. § 1291 and the collateral order doctrine. See, e.g., Transamerica Leasing, Inc., 200 F.3d at 855 ("We do not reach Venezuela's act of state defense because it is not properly subject to interlocutory appeal." (citing Walter Fuller Aircraft Sales, Inc., 965 F.2d at 1387 )); Walter Fuller Aircraft Sales, Inc., 965 F.2d at 1387 ("As the invocation of an act of state defense does not call into question federal jurisdiction, the district court's ruling on the issue is not a part of the immediately appealable order denying sovereign immunity.").
2. Based on the principles of neutrality and sound appellate practice enunciated in Furlong, we conclude that act of state rulings are not immediately appealable pursuant to section 13-4-102(1).
a. Principles of Neutrality
¶ 32 While FSIA immunity insulates foreign sovereigns from the reach of American courts for certain types of claims, the act of state doctrine requires merely that, after asserting jurisdiction and in the process of deciding a claim against a foreign sovereign, courts must presume that the foreign sovereign's acts taken within its own borders are valid. See W.S. Kirkpatrick & Co ., 493 U.S. at 409, 110 S.Ct. 701 ("Courts in the United States have the power, and ordinarily the obligation, to decide cases and controversies properly presented to them. The act of state doctrine does not establish an exception for cases and controversies that may embarrass foreign governments, but merely requires that, in the process of deciding, the acts of foreign sovereigns taken within their own jurisdictions shall be deemed valid.").
¶ 33 Thus, rather than providing immunity from suit, the act of state doctrine, as described by the federal courts, is more properly understood as an issue preclusion device that provides a substantive defense on the merits of a claim. See Samantar v. Yousuf, 560 U.S. 305, 130 S.Ct. 2278, 2290, 176 L.Ed.2d 1047 (2010) (act of state doctrine provides substantive defense on the merits); Republic of Austria v. Altmann, 541 U.S. 677, 700, 124 S.Ct. 2240, 159 L.Ed.2d 1 (2004)
*789 (same); Arango v. Guzman Travel Advisors Corp., 621 F.2d 1371, 1380 (5th Cir.1980) (act of state doctrine "operates as an issue preclusion device, foreclosing judicial inquiry into the validity or propriety of [certain] acts in litigation between any set of parties").
¶ 34 In Colorado, although interlocutory rulings that determine jurisdictional immunity from suit usually are immediately appealable, see, e.g ., Furlong, 956 P.2d at 551-52 ; Rush Creek Solutions, Inc., 107 P.3d at 406, rulings on substantive defenses to liability on the merits of claims, like CGIA qualified immunity, usually are not. See Richardson v. Starks, 36 P.3d 168, 171 (Colo.App.2001) (ruling on CGIA qualified immunity not immediately appealable because CGIA "qualified immunity is not a jurisdictional issue of sovereign immunity, but rather, an affirmative defense" that provides immunity from liability); see also Furlong, 956 P.2d at 551 (distinguishing CGIA qualified immunity from qualified immunity in a § 1983 case and concluding that "qualified immunity under the CGIA does not apply to the qualified immunity doctrine under § 1983").
¶ 35 Thus, because act of state protection is not immunity from suit but, instead, constitutes merely a substantive defense on the merits, Samantar, 130 S.Ct. at 2290, we would violate principles of neutrality by denying immediate appeal from CGIA qualified immunity rulings, but granting immediate appeal from act of state rulings. See Furlong, 956 P.2d at 551.
b. Sound Colorado Appellate Practice
¶ 36 We also are persuaded that it would not be sound appellate practice to grant interlocutory appeals from act of state rulings.
¶ 37 As discussed above, the harm against which the act of state doctrine protects is not the burden of litigating a claim based on a foreign sovereign's domestic actions. Instead, the harm occurs when a court issues a final decision on the merits of the litigation that declares a foreign sovereign's domestic action illegal. See W.S. Kirkpatrick & Co., 493 U.S. at 406, 110 S.Ct. 701 ("Act of state issues only arise when a court must decide -that is, when the outcome of the case turns upon-the effect of official action by a foreign sovereign."); see also Samantar , 130 S.Ct. at 2290 (act of state doctrine provides substantive defense on the merits); Altmann , 541 U.S. at 700, 124 S.Ct. 2240 (same).
¶ 38 Furthermore, the substantive defense that the act of state doctrine provides is not absolute. Even when a foreign sovereign acts within its own borders, American courts may nevertheless judge the validity of that act depending on the nature and severity of the resulting foreign policy implications. See Sabbatino, 376 U.S. at 423, 428, 84 S.Ct. 923 (act of state doctrine "does not irrevocably remove from the judiciary the capacity to review the validity of foreign acts of state"; instead, "the less important the implications of an issue are for our foreign relations, the weaker the justification for exclusivity in the political branches" and application of act of state protection). And, because act of state protection is a substantive defense to a final decision on the merits, it is the foreign policy implications only at the time of the final decision that are relevant to a court's act of state ruling. See Republic of Philippines v. Marcos, 818 F.2d 1473, 1486, 1486 n. 14 (9th Cir.1987) (while our government's foreign policy objectives can change rapidly, "litigation proceeds at its own pace and the [final decision on the merits based on an act of state], whatever it may be, may well come at a time most inopportune from the point of view of our foreign policy as it is then conceived"; therefore, in suit brought by Philippine government against its former president, court declined Philippine government's request not to grant act of state protection and to instead adjudicate validity of former president's acts because it was unclear, on review of preliminary injunction, whether current Philippine government would be in power and would desire the same result at the time of an eventual final decision in the case).
¶ 39 Thus, addressing act of state doctrine issues on interlocutory appeal would require appellate courts to attempt to predict not only when and on what basis the trial court will render its final decision on the merits, but what the foreign policy implications of the act of state ruling will be at that time.
*790 Because appellate courts are not so clairvoyant, we conclude that the more sound appellate practice is to wait to address act of state issues on appeal from final judgment, when an appellate court can more accurately assess the foreign policy implications of its ruling. See id. at 1486 n. 17 ("When the courts engage in piecemeal adjudication of the legality of the sovereign acts of states, they risk disruption of our country's international diplomacy."); cf. Harding Glass Co., Inc. v. Jones, 640 P.2d 1123, 1127 (Colo.1982) (purpose of requiring adjudication of entire claim for relief before certifying appeal is "to avoid the dissipation of judicial resources through piecemeal appeals").
B. We have no pendent appellate jurisdiction to address the act of state ruling on interlocutory appeal.
¶ 40 Pendent appellate jurisdiction empowers federal appellate courts to address an issue that is not otherwise immediately appealable if it is closely related to an independently appealable order, or if fairness or efficiency so require. See Jungquist, 115 F.3d at 1027 ("Considerations of fairness or efficiency may also justify the exercise of pendent appellate jurisdiction...."); Walter Fuller Aircraft Sales, Inc., 965 F.2d at 1387 (federal appellate courts "may consider claims under [ ] pendent appellate jurisdiction that are closely related to the order properly before [the court]").
¶ 41 Some federal jurisdictions, when allowing interlocutory appeal of a FSIA immunity ruling under 28 U.S.C. § 1291 and the collateral order doctrine, have asserted pendent appellate jurisdiction over a related act of state doctrine ruling. See Walter Fuller Aircraft Sales, Inc., 965 F.2d at 1387 (court does not have appellate jurisdiction over act of state doctrine issue pursuant to collateral order doctrine, but exercises pendent appellate jurisdiction to reach act of state issue "because the act of state issue is closely related to the issue of sovereign immunity" over which court has jurisdiction as collateral order).
¶ 42 However, the power to exercise pendent appellate jurisdiction in the federal courts "flows from the plenary power of appellate review," and not from any jurisdictional statute or rule. O'Bar v. Pinion, 953 F.2d 74, 80 (4th Cir.1991) ; see Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 48-49, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995) (suggesting that authority for pendent appellate jurisdiction lies outside federal statutes and rules promulgated by Supreme Court).
¶ 43 This court has no parallel authority. To the contrary, we are a statutorily created court and, without applicable exception provided by our legislature or Colorado Supreme Court rule, see e.g ., § 13-4-102.1 ; C.A.R. 4.2 (concerning interlocutory appeals of questions of law in civil cases), we have jurisdiction to consider appeals only from final judgments. See Woznicki v. Musick, 94 P.3d 1243, 1245 (Colo.App.2004) ; Holdridge v. Bd. of Educ., 881 P.2d 448, 450-51 (Colo.App.1994) ("[W]e have no authority to expand the appellate jurisdiction specified by the General Assembly."). ¶ 44 Thus, because we do not have pendent appellate jurisdiction, we need not address plaintiffs' request that, in our discretion, we exercise it here.
III. The trial court properly determined that defendant was not entitled to FSIA immunity.
¶ 45 Addressing the merits of defendant's appeal from the trial court's denial of the motion to dismiss based on FSIA immunity, we review the court's conclusions of law de novo, and its factual findings for clear error. See Hansen, 601 F.3d at 1062.
¶ 46 As discussed, the FSIA provides that any "agency or instrumentality of a foreign state" shall be "immune from the jurisdiction of the courts of the United States and of the States." 28 U.S.C. §§ 1603, 1604. This immunity is not available, however, when the action is "based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2).
*791 ¶ 47 Here, the trial court determined that defendant was not an "agency or instrumentality" of South Korea, but that even if it were, its contract with plaintiffs constituted a commercial activity with sufficient connection to the United States to bring it within the commercial activity exception to FSIA immunity.
¶ 48 In support of its contention that the trial court erred, defendant argues that (1) it is an "agency or instrumentality" of South Korea; (2) the contract was not commercial activity because defendant never intended to, and never did, profit from it; and (3) defendant never engaged in any activity in the United States, or any activity that caused a "direct effect" in the United States. We conclude that even assuming defendant is an "agency or instrumentality" of South Korea, the trial court correctly determined that it engaged in "commercial activity" that caused a "direct effect" in the United States.
A. The parties' contract constituted "commercial activity."
According to the FSIA:
A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.
28 U.S.C. § 1603(d).
¶ 49 In determining whether an activity is commercial, "the question is not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives." Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) ; see Doe v. Holy See, 557 F.3d 1066, 1090 (9th Cir.2009) ("[N]o profit need be made, or need even be possible, for the activity to qualify as 'commercial.' ").
¶ 50 Instead, "the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in trade and traffic or commerce." Weltover, Inc., 504 U.S. at 614, 112 S.Ct. 2160 (internal quotation marks omitted).
¶ 51 The trial court found, with record support, that the contract made plaintiffs an overseas branch of Kukkiwon, and contemplated activity in the United States that could create revenue and profits for both plaintiffs and Kukkiwon. Because private parties similarly use contracts to create franchises, see, e.g., Ahluwalia v. QFA Royalties, LLC, 226 P.3d 1093, 1096 (Colo.App.2009), and to generate and divide revenue, see, e.g., Mr. Steak, Inc. v. Belleview Steak, Inc., 38 Colo.App. 278, 282, 555 P.2d 179, 182 (1976) (franchise contract provides for division of revenue between franchisee and franchisor), the trial court correctly determined that the contract here constituted "commercial activity." See Weltover, Inc., 504 U.S. at 614-15, 112 S.Ct. 2160 ("[A] foreign government's issuance of regulations limiting foreign currency exchange is a sovereign activity, because such authoritative control of commerce cannot be exercised by a private party; whereas a contract to buy army boots or even bullets is a 'commercial' activity, because private companies can similarly use sales contracts to acquire goods ...."); see also and compare Honduras Aircraft Registry,Ltd. v. Gov't of Honduras, 129 F.3d 543, 547-49 (11th Cir.1997) (Honduran government engaged in commercial activity where it contracted for services to help it register aircraft even though aircraft registration was a sovereign act because contract was basic one for services and therefore "of the type negotiable among private parties") with Mwaniv. bin Laden , 417 F.3d 1, 17 (D.C.Cir.2005) (Afghanistan's grant of refuge to terrorist training camps was not commercial activity; grant of refuge is not merely the provision of land for money, but a "uniquely sovereign act" because it requires exercise of police powers and authority over expulsion of foreign aliens, and is therefore "not the sort of benefit that a commercial landlord can bestow upon a commercial tenant").
B. The parties' commercial activities had a "direct effect" in the United States.
¶ 52 Similarly, the "commercial activity" described above had a "direct effect" in the *792 United States because it gave plaintiffs the right to operate as Kukkiwon's United States branch. See Weltover, Inc., 504 U.S. at 618, 112 S.Ct. 2160 ("[A]n effect is direct if it follows as an immediate consequence of the defendant's ... activity." (internal quotation marks omitted)); see also and compare I.T. Consultants, Inc. v. Republic of Pakistan, 351 F.3d 1184, 1190-91 (D.C.Cir.2003) (Pakistan's alleged breach of contract had "direct effect" in the United States because contract required Pakistan to pay a bank in Virginia) with Princz v. Federal Republic of Germany, 26 F.3d 1166, 1172-73 (D.C.Cir.1994) (current American citizen's enslavement by Nazis in Germany during World War II had no "direct effect" in United States because (1) there were too many intervening events between citizen's forced work as laborer in Nazi war effort and any effect in United States; (2) Germany's current use of United States mail, wire, and banking systems to administer reparations for Nazi abuse is not an "immediate consequence" of citizen's enslavement; and (3) citizen's continued suffering in United States as a result of enslavement followed many intervening years of suffering in Poland and Germany after the war).
¶ 53 Here, the record shows that, without the contract, plaintiffs were unable to operate as an overseas branch and conduct events in the United States in Kukkiwon's name. Thus, even though the contract was signed in South Korea, and even if we assume that the "commercial activity" contemplated by the contract was to occur outside the United States, the breach of contract claim still fell within the commercial activity exception because neither party disputed that the contract allowed plaintiffs to operate as Kukkiwon's United States branch. See 28 U.S.C. § 1605(a)(2) (no FSIA immunity if action is based on act "outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States").
¶ 54 Our conclusion is unchanged even if, as defendant argues, it is distinct from the entity that signed the contract ("old" Kukkiwon) as a result of the South Korean government having dissolved and replaced old Kukkiwon with defendant, a South Korean government agency. Assuming defendant is correct, the South Korean government's action in enacting the statute dissolving and replacing old Kukkiwon with defendant, or defendant's action in cancelling the contract, nevertheless had a "connection with a commercial activity" that caused a "direct effect" in the United States based on our analysis above. See 28 U.S.C. § 1605(a)(2).
IV. Other Issues
¶ 55 We do not address in this appeal any other issues raised by the parties because they relate to the merits of plaintiffs' contract claim.
V. Remand
¶ 56 Plaintiffs' motion to dismiss defendant's appeal from the trial court's denial of defendant's motion to dismiss the claim based on the act of state doctrine is granted; plaintiffs' motion to dismiss defendant's appeal from the trial court's denial of defendant's motion to dismiss the claim based on FSIA immunity is denied; the trial court's ruling that defendant is not entitled to FSIA immunity is affirmed. The case is remanded to the trial court for completion of the trial, and for further proceedings as necessary.
JUDGE ROY* and JUDGE NIETO * concur.

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2012.